**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JOCELYN MORALES and JANE DOES 1-100,
*on behalf of themselves and all others similarly situated*,

                         Plaintiffs,

              -against-

BETTER PLANET BRANDS, LLC d/b/a
ACURE ORGANICS,

                         Defendant.

---

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

        Plaintiffs, JOCELYN MORALES and JANE DOES 1-100 (together, "Plaintiffs")

individually and on behalf of all other persons similarly situated, by their undersigned attorneys,

as and for their Complaint against the defendant, BETTER PLANET BRANDS, LLC d/b/a

ACURE ORGANICS (hereinafter, "Defendant"), allege the following based upon personal

knowledge as to themselves and their own action, and, as to all other matters, respectfully allege,

upon information and belief, as follows (Plaintiffs believe that substantial evidentiary support

will exist for the allegations set forth herein after a reasonable opportunity for discovery):

## NATURE OF THE ACTION

1.   This is a consumer protection class action arising out of Defendant's deceptive practices in the marketing, advertising, and promotion of their 8.0 fluid ounce and 24.0 fluid ounce Acure® repairing shampoo and conditioner products (collectively, the "Products"). As alleged with specificity herein, through an extensive, widespread, comprehensive, and uniform nationwide marketing campaign, Defendant claims that the Products actually repair hair. Defendant's hair repair claims, however, are false, misleading, and reasonably likely to deceive the public because there are no ingredients in the Products that could actually repair hair damage.

2.   Defendant makes the hair repair claims throughout the Products' marketing materials. Each person who purchased the Product has been exposed to Defendant's misleading advertising message. For example, on the packaging of the 8.0 oz. Repair Shampoo Product, Defendant represents that its "formula performs "*hair repair with serious flair*." The packaging of the 8.0 oz. Repair Conditioner Product claims that the Product "*adds shine, locks in moisture, repairs damage, strengthens follicles, and vacuums your house. Okay, maybe it doesn't vacuum your house, but it does repair your hair!*" The product page for a bundle package of the Products on Amazon.com      (https://www.amazon.com/Acure-Organics-Moroccan-Natural-Conditioner/dp/ B00X6HIXD0) states that the Products "*repair damaged hair with an all natural moroccan argan oil treatment that soothes hair while building volume*." The Repair Shampoo Product's page   on   Target.com   (http://www.target.com/p/acure-organics-repairing-shampoo-8-oz/-/A-49115494) accentuates the claims of the Product in the advertising copy by exclaiming, "*Lock in moisture, repair damage, and strengthen hair follicles with ACURE's nutrient-rich shampoo!*" The only reason a consumer would purchase the Products is to obtain the advertised hair repair benefits.

3.   The Products claim to be "clinically proven" to "repair" and do "triple action repairing". However, no ingredient in the Products has been demonstrated to actually repair hair, particularly at the rates claimed by Defendant. Hair is primarily composed of a family of proteins called keratin, and once damaged through dyeing or bleaching, heat treatments, daily brushing and other damaging acts, can be most effectively restored to health only with treatments that target and repair or restore keratin. The conditioning ingredients in the Products, including betaine and guar hydroxypropyltrimonium chloride, may provide the illusion of healthy hair, but certainly do not "repair" hair because they do not specifically target keratin proteins. Further, the ingredients are commonly found in other competitor products that do not share similarly outrageous claims.

4.   Consumer product companies intend for consumers to rely upon their representations, and reasonable consumers do in fact so rely. These representations are the only source of information consumers can use to make decisions concerning whether to buy and use such products.

5.   Consumers lack the ability to test or independently ascertain the efficacy and genuineness of product claims of normal everyday consumer products, especially at the point of sale. Reasonable customers must and do rely on the company to honestly report the nature of a product.

6.   Plaintiffs and Class Members did reasonably rely substantially on Defendant's hair repair representations in deciding to purchase the Product and were thereby deceived.

7.   As a result of the misleading hair repair claims conveyed by Defendant's marketing campaign, Defendant has caused Plaintiffs and other consumers to purchase Products that do not

perform as represented.  Plaintiffs and other similarly situated consumers have been harmed in the amount they paid for the Products.

8.  As a result of Defendant's misconduct, Defendant was able to sell the Products to hundreds of thousands of consumers throughout the United States and to realize sizeable profits.

9.  Plaintiffs and Class Members (defined below) were harmed and suffered actual damages in that Plaintiffs and the Class Members did not receive the benefit of their bargain as purchasers of the Product, which were represented to "repair" and perform "triple action repair" Instead, Plaintiffs and Class Members are worse off after purchasing the Products, as Plaintiffs and Class Members paid a price premium over other shampoo and conditioner products, even though the Products did not perform their advertised function of repairing hair damage. A sample of competitor shampoo and conditioner products are shown below:

| Product | Brand | Price | Retailer |
|---|---|---|---|
| Suave Professionals Almond + Shea Butter Shampoo, 28 Fl. Oz. | Suave | $2.69 | Amazon.com |
| Aussie Moist Shampoo with Pump, 29.2 Fl. Oz. | Aussie | $4.94 | Amazon.com |
| Herbal Essences Tea-Lightfully Clean Refreshing Shampoo, 10.1 Fl. Oz. | Herbal Essences | $3.59 | Amazon.com |
| **Acure Organics Repairing Shampoo, 8 Fl. Oz.** | **Acure Organics** | **$9.99** | **Acureorganics.com** |

| Product | Brand | Price | Retailer |
|---|---|---|---|
| Pantene Pro-V Daily Moisture Renewal Hydrating Conditioner 24 Fl. | Pantene | $5.69 | Amazon.com |

| Oz. | | | |
|---|---|---|---|
| OGX Conditioner, Hydrating TeaTree Mint, 13 Fl. Oz. | OGX | $4.93 | Amazon.com |
| TRESemme Conditioner, Flawless Curls 28 Fl. Oz. | TRESemme | $3.50 | Amazon.com |
| **Acure Repairing Conditioner, 8 Fl. Oz.** | **Acure Organics** | **$9.99** | **Acureorganics.com** |

10. Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers nationwide, who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Products. Plaintiffs seek to end Defendant's dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased the Products.

11. Defendant marketed its Products in a way that is deceptive to consumers under consumer protection laws of New York. Defendant has been unjustly enriched as a result of its conduct. For these reasons, Plaintiffs seek the relief set forth herein.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed class consists of over 100 class members; (ii) at least some of the proposed class members have a different citizenship from Defendant; and (iii) the amount in controversy exceeds the sum of value of $5,000,000.00, exclusive of interest and costs.

13. This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendant because its Products are advertised, marketed, distributed, and sold throughout New York State; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United State, including in New York State; Defendant is authorized to do business in New York State; and Defendant has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

14. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiff MORALES's claims occurred in this District and Defendant is subject to personal jurisdiction in this District. Plaintiff MORALES purchased Defendant's Products in Bronx County.

## PARTIES

### *Plaintiffs*

15. Plaintiff MORALES is, and at all relevant times hereto has been, is a citizen of the State of New York and resides in Bronx County, New York. In the twelve month period prior to the filing of this Complaint, Plaintiff MORALES was exposed to and saw Defendant's hair repair claims on the Product images and accompanying copy on Amazon.com. In reliance on the hair repair claims the Products page, Plaintiff purchased the bundle package of the 8 fluid ounce shampoo and conditioner Products for personal consumption through Amazon.com. The retail purchase price was approximately $18.99 (or more) for a bundle package of the shampoo and conditioner Products. Plaintiff purchased the Products believing that they would provide the

advertised hair repair benefits.  When purchasing the Products, Plaintiff read and relied upon the representations on the Product label and on the Amazon.com bundle package page. As a result of her purchases, Plaintiff suffered injury in fact and lost money. Had Plaintiff known the truth about Defendant's misrepresentations and omissions, she would not have purchased the Product. Further, should Plaintiff encounter the Products in the future, she could not rely on the truthfulness of the labels' statements characterizing the nature of the Products, absent corrective advertising to the Products. However, Plaintiff would still be willing to purchase the current formulation of the Products, absent the price premium, so long as Defendant engages in corrective advertising and labeling. Plaintiff is not claiming physical harm or seeking the recovery of personal injury damages.

16. Plaintiffs JANE DOES 1-100 are, and at all times relevant hereto has been, citizens of the any of the fifty states and the District of Columbia. During the Class Period, Plaintiffs JANE DOES 1-100 purchased Products for personal consumption within the United States. Plaintiffs purchased the Products at a premium price and were financially injured as a result of Defendant's deceptive conduct as alleged herein.

*Defendant*

17. Defendant BETTER PLANET BRANDS, LLC d/b/a ACURE ORGANICS is a domestic corporation organized under the laws of Florida with its headquarters at 1850 Southeast 17th Street, Suite 106 A, Fort Lauderdale, FL 33316 and an address for service of process at Corporation Service Company, 1201 Hays St., Suite 107, Tallahassee, FL 32301. Defendant manufactured, packaged, distributed, advertised, marketed and sold the Products to millions of customers nationwide.

18. Defendant develops, manufactures, distributes, markets and sells personal care and beauty products throughout the fifty states and the District of Columbia. The labeling, packaging and advertising for the Products, relied upon by Plaintiffs, were prepared and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. Such labeling, packaging and advertising were designed to encourage consumers to purchase the Products and reasonably mislead the reasonable consumer, i.e. Plaintiffs and the Class, into purchasing the Products. Defendant owned, manufactured and distributed the Products and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling, packaging and advertising for the Products.

## FACTUAL ALLEGATIONS

**The Pro-V Keratin Repair Shampoo**

19. Defendant manufactures, markets, and sells hair care products, including the Products, as part of Acure Organics brand.

20. The Products are sold at stores such as Whole Foods and through e-commerce websites such as Target.com, iHerb.com and Amazon.com.

21. Defendant manufactures, distributes, markets, and sells the Products nationwide.  The 8.0 oz. Acure Organics Repair Shampoo and Conditioner Products retail for approximately $9.99 (or more) each. The 24.0 oz. Acure Organics Repair Shampoo and Conditioner Products retail for approximately $19.99 (or more) each. *See* the Products below:






**Defendant's False and Deceptive Advertising of the Products**

22. Throughout their advertising of Products, Defendant had consistently conveyed the very specific message to consumers that the Products, with its exceptional formulas, are able to repair damaged hair.

23. Since launching the Products, Defendant has consistently conveyed its uniform, deceptive message to consumers throughout the United States, including New York, that the Products will repair damaged, among other types, of hair. This hair repair claim has been made and repeated

across a variety of media including Defendant's website, stockists and corresponding online promotional materials and at the point of purchase, where it cannot be missed by consumers. In truth, Defendant's hair repair claim is false, misleading, and deceptive.

24. Defendant's false, misleading, and deceptive marketing campaign begins with the front of the Product's package and label. The front of every shampoo and conditioner Product's packaging and labeling states prominently in all capital letters, printed immediately above the word "shampoo" or "conditioner," is the word "repairing." The back of the Products' packaging and labeling also elaborates that each Product repairs hair in addition to treating other aspects of hair. *See* the fronts and backs of Products' packaging and labeling below:









25. Defendant reinforces the false and deceptive damage repair claims on the back of the Products' packaging and labeling, which states that the Products perform "triple action repairing." The Products, however, did not repair and improve the overall health of Plaintiff MORALES's hair despite her using the Products as instructed on the back labels of the packaging. Moreover, Plaintiff MORALES believes that the Products did not alleviate the issues she had with hair shine, strength and moisture more than any other shampoo and conditioner products.

**Defendant's Damage Repair Claims Are False and Misleading**

26. In truth, the Products do not actually repair damaged hair as advertised by Defendant. The packaging and marketing materials used by Defendant contain and propagate identical claims.

27. Upon information and belief, there are no ingredients used in the Products that cause damaged hair to be repaired. Defendant does not provide the public with any peer-reviewed, independent clinical studies proving that the Products or its ingredients repair damaged hair. Moreover, the "patent-pending Triple Moisture System" boasted by Defendant is an ornamental name for common ingredients that are frequently used in hair care products. Thus, Defendant's hair repair claims are false, misleading and reasonably likely to deceive the public.

28. A reasonable consumer would not interpret Defendant's hair repair claims as being purely cosmetic in nature because Defendant repeats its hair repair claims across platforms and packaging.

**The Impact of Defendant's Misleading and Deceptive Advertising**

29. Even though the Product does not repair hair, consumers pay a premium over other shampoo and conditioner sets, which unlike Products do not claim to repair hair. For example, drugstore shampoos and conditioners such as Suave Professionals Almond + Shea Butter Shampoo, 28 fl. oz. costs $2.69 and TRESemme Conditioner, Flawless Curls 28 fl. oz. costs $3.50. The only reason a consumer would pay the premium price of $9.99 per 8 fluid ounce shampoo Product and 8 fluid ounce conditioner Product is to obtain rapid damage repair benefits, which Products do not provide.

30. As the manufacturers, sellers and/or distributors of the Product, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in the Products on hair repair.

31. Defendant knew or should have known, but failed to disclose that the Products do not repair hair as advertised by Defendant and that it does not have competent and reliable clinical tests to support its claims.

32. As a result of Defendant's deceptive damage repair claims, Plaintiffs and other members of the proposed Class have purchased the Products that do not perform as advertised. Defendant has reaped enormous profits from its false, misleading and deceptive marketing and sale of the Products. Plaintiffs and members of the proposed Class have been deceived and/misled by Defendant's deceptive lash growth claims. Defendant's damage repair claims were a material factor in influencing Plaintiffs' decision to purchase and use the Products. Plaintiffs would not have purchased the premium priced Products had they known that Defendant's damage repair claims were false and misleading.

## CLASS ACTION ALLEGATIONS

*The Nationwide Class*

33. Plaintiffs bring this action as a class action pursuant Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Nationwide Class"):

> All persons or entities in the United States who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

*The New York Class*

34. Plaintiff MORALES seeks to represent a class consisting of the following subclass (the "New York Class"):

> All New York residents who made retail purchases of the Products
> during the applicable limitations period, and/or such subclasses as
> the Court may deem appropriate.

35. The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

36. Plaintiffs reserve the right to revise the Class definitions based on facts learned in the course of litigating this matter.

37. ***Numerosity***. While the exact number and identities of purchasers of the Product are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that the Nationwide Class and the New York Subclass (collectively, the "Class" or "Class Members") contain thousands of purchasers and are so numerous that individual joinder of all Class members is impracticable.

38. ***Existence and Predominance of Common Questions of Law and Fact***. Questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting only individual Class members and include:

> a. Whether Defendant's damage repair claims discussed above are true, or are misleading, or objectively likely to deceive;
>
> b. Whether Defendant's marketing and advertising of the Products is false, fraudulent, deceptive, unlawful, or misleading;
>
> c. Whether Defendant has breached warranties made to the consuming public about its Products;

      d.    Whether Defendant's marketing, promotion, advertising and sale of the Products

              is and was a deceptive act or practice in the conduct of business directed at

              consumers, giving rise to consumer law violations in all other jurisdictions;

      e.    Whether Plaintiffs and members of the Class sustained monetary loss and the

              proper measure of loss;

      f.    Whether Defendant's conduct constitutes unjust enrichment, and whether equity

              calls for disgorgement of unjustly obtained or retained funds, restitution to, or

              other remedies for the benefit of the Class;

      g.    Whether Plaintiffs and other members of the Class are entitled to other

              appropriate remedies, including equitable relief; and

      h.    Whether Defendant's conduct rises to the level of reprehensibility under

              applicable law such that the imposition of punitive damages is necessary and

              appropriate to fulfill the societal interest in punishment and deterrence, and the

              amount of such damages and/or their ratio to the actual or potential harm to the

              Class.

39. ***Typicality***. Plaintiffs' claims are typical of those of the Class members because, *inter alia*, Plaintiffs and the other Class members were all injured by same uniform conduct, as detailed herein, and were subject to Defendant's hair repair claims that accompanied each and every damage repair Product that Defendant sold. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

40. ***Adequacy of Representation***. Plaintiffs will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in prosecuting nationwide consumer class actions.  Plaintiffs understand the nature of their claims herein, have

no disqualifying conditions, and will vigorously represent the interests of the Class.   Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class.

41. ***Superiority***. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by any individual Class member is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  Thus, it would not be economically feasible for an individual class member to prosecute a separate action on an individual basis, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

42. The prerequisites to maintaining a class action for equitable relief pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

43.  Plaintiffs seek preliminary and permanent equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiffs and Class members.

44. Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiffs and Class members.

## CAUSES OF ACTION

### COUNT I

### INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

45. Plaintiff MORALES realleges and incorporates herein by reference all allegations contained above as if fully set forth herein, and further alleges as follows:

46. Plaintiff MORALES brings this claim individually and on behalf of the other members of the Class for violations of NY GBL § 349.

47. Defendant's business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

48. The practices of Defendant described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, *inter alia*, one or more of the following reasons:

    a.  Defendant engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Products, which did, or tended to, mislead Plaintiff and the Class about facts that could not reasonably be known by them;

    b.  Defendant failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

    c.  Defendant caused Plaintiff and the Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

   d.   Defendant failed to reveal material facts to Plaintiff and the Class with the intent that Plaintiff and the Class members rely upon the omission;

   e.   Defendant made material representations and statements of fact to Plaintiff and the Class that resulted in Plaintiff and the Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

   f.   Defendant intended that Plaintiff and the members of the Class rely on its misrepresentations and omissions, so that Plaintiff and Class members would purchase the Products; and

   g.   Defendant knowingly and falsely represented and advertised that the Products were fit to be used for the purpose for which it was intended, to repair damaged hair, when Defendant knew that the Products did not work as promised.

49. Under all of the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

50. Defendant's actions impact the public interest because Plaintiff and members of the Class were injured in exactly the same way as thousands of others purchasing the Product as a result of and pursuant to Defendant's generalized course of deception.

51. By committing the acts alleged in this Complaint, Defendant has misled Plaintiff and the Class into purchasing the Products, in part or in whole, due to an erroneous belief that the Products will repair damaged hair. This is a deceptive business practice that violates NY GBL § 349.

52. Defendant's damage repair claims misled Plaintiff and the members of the Class. Had Plaintiff and members of the Class known of the true facts about the Product's failure to work as

promised, they would not have purchased the Products and/or paid substantially less for other similar products.

53. The foregoing deceptive acts, omissions and practices were directed at consumers.

54. The foregoing deceptive acts, omissions and practices set forth in connection with Defendant's violations of NY GBL § 349 proximately caused Plaintiff and other members of the Classes to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products, and are entitled to recover such damages, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

55. Plaintiff MORALES realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

56. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misbranding its Products as being able to repair hair.

57. The practices employed by Defendant, whereby Defendant advertised, promoted and marketed that its Products are able to repair hair, were unfair, deceptive and misleading and are in violation of NY GBL § 349.

58. The foregoing deceptive acts and practices were directed at consumers.

59. Plaintiff and the other Class members suffered a loss as a result of Defendant's deceptive and unfair trade acts. Specifically, as a result of Defendant's deceptive and unfair trade acts and practices, Plaintiff and the other Class members suffered monetary losses associated with the purchase of the Products, i.e. the purchase prices of the Products and/or the premiums paid by Plaintiff and the Class for said Products.

**COUNT III**

**NEGLIGENT MISREPRESENTATION**
**(On Behalf of the Nationwide Class)**

60. Plaintiffs reallege and incorporate herein by reference all allegations contained above as if fully set forth herein, and further alleges as follows:

61. Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Class.

62. In making the false, misleading and deceptive representations of fact to Plaintiffs and members of the Class described herein, Defendant knew and intended that consumers would pay a premium for Products labeled as being able to repair hair over comparable products that are not so labeled, furthering Defendant's private interest in increasing sales for its Products and decreasing the sales of products that are truthfully offered by Defendant's competitors, or those that do not claim to repair hair.

63. In making the representations of fact to Plaintiffs and members of the Class described herein, Defendant has failed to fulfill its duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

64. Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. As the manufacturer, distributor, and marketer of the Products, Defendant was in a unique position to know the truth about the damage repair claims. Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

65. Plaintiffs and members of the Class reasonably relied upon these false representations and nondisclosures by Defendant when purchasing the Products, which reliance was justified and reasonably foreseeable.

66. As a result of Defendant's wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

## COUNT IV

### BREACH OF EXPRESS WARRANTIES
### (On Behalf of the Nationwide Class)

67. Plaintiffs reallege and incorporate herein by reference all allegations contained above as if fully set forth herein, and further allege as follows:

68. Defendant provided Plaintiffs and other members of the Class with written express warranties, including, but not limited to, warranties that its Products are able to repair hair.

69. This breach resulted in damages to Plaintiffs and the other members of the Class who bought Defendant's Products but did not receive the goods as warranted in that the Products were not as effective as they are represented to be.

70. As a proximate result of Defendant's breach of warranties, Plaintiffs and the other Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for Products that did not conform to what Defendant promised in its promotion, marketing, advertising, packaging and labeling and they were deprived of the benefit of their bargain and spent money on Products that did not have any

value or had less value than warranted or Products that they would not have purchased and used had they known the true facts about them.

## COUNT V

### UNJUST ENRICHMENT
### (On Behalf of the Nationwide Class)

71.    Plaintiffs reallege and incorporate herein by reference all allegations contained above as if fully set forth herein, and further alleges as follows:

72.    As a result of Defendant's deceptive, fraudulent and misleading labeling, packaging, advertising, marketing and sales of the Products, Defendant was enriched at the expense of Plaintiffs and members of the Class through the payment of the purchase price for Defendant's Products.

73.    Plaintiffs and the Class conferred a benefit on Defendant through purchasing the Products, and Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefits conferred on them.

74.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs, and all others similarly situated, in light of the fact Defendant has misrepresented that the Products are able to repair hair when the Products do not contain ingredients that allow for actual hair repair or drastic damage reversal.

75.    Defendant profited from its unlawful, unfair, misleading and deceptive practices and advertising at the expense of Plaintiffs and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain said benefit.

76.    Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and has lost money or property as a result of Defendant's actions, as set forth herein. Defendant

is aware that the claims and/or omissions that it made about the Products are false, misleading and likely to deceive reasonable consumers, such as Plaintiffs and members of the Class.

77.   Plaintiffs and Class members do not have an adequate remedy at law against Defendant (in the alternative to the other causes of action alleged herein).

78.   Accordingly, the Products are valueless such that Plaintiffs and Class members are entitled to restitution in an amount not less than the purchase price of the Products paid by Plaintiffs and Class members during the Class Period.

79.   Plaintiffs and Class members are entitled to restitution in excess amount paid for the Products, over and above what they would have paid if the Products had been adequately advertised, and Plaintiffs and Class members are entitled to disgorgement of the profits Defendant derived from the sale of the Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, seek judgment against Defendant, as follows:

a. An Order that this action be maintained as a class action and appointing Plaintiff MORALES as representative of the Nationwide Class and New York Subclass;

b. An Order appointing the undersigned attorneys as class counsel in this action;

c. Awarding restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to Plaintiffs and the proposed Class members;

d. Awarding declaratory relief as permitted by law or equity, including: directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

e.  Statutory pre-judgment and post-judgment interest on any amounts;

f.  Awarding attorneys' fees and costs; and

g.  Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and the Class, demands a trial by jury on all questions of fact raised by the Complaint.

Dated: August 15, 2016

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

By: ___/s/ C.K. Lee_____
        C.K. Lee, Esq.